## AFFIDAVIT OF SPECIAL AGENT SEAN RAFFERTY IN SUPPORT OF A CRIMINAL COMPLAINT

I, Sean Rafferty, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1.I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.I have been a Special Agent with the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since December 2002. I am currently assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF") Boston Strike Force in Watertown, Massachusetts, along with agents from other federal, state, and local law enforcement agencies, including the U.S. Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and the Massachusetts State Police ("MSP"). Since becoming a Special Agent with HSI, I have conducted numerous investigations of unlawful drug distribution and importation in violation of 21 U.S.C. §§ 841(a)(1), 843(b), 846, 952, 960 and 963, the laundering of drug proceeds in violation of 18 U.S.C. §§ 1956 and 1957, and have conducted and participated in wiretaps, physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and witnesses and reviewed recorded conversations, telephone, financial records and drug records. In 2003, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and the United States Customs Service Academy, Customs Basic Enforcement School. I have a Bachelor

1

of Science degree in Accounting Information Systems from Bryant College, Smithfield, RI, and a Master's degree in Criminal Justice from Western New England College. I have attended the DEA Narcotics Investigator training, DEA Telecommunication training, DEA Highway Interdiction training, DEA Jetway Interdiction training, ICE Asset Forfeiture and Financial Investigations training, and the ICE Conducting Title III intercepts training. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. Through my training, education and experience, I have become familiar with the manner in which narcotic proceeds are laundered both domestically and internationally.

3.  I have written and/or participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacture and distribution of controlled substances, United States currency, records of narcotics and monetary transactions, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of numerous defendants, informants and witnesses who had personal knowledge regarding narcotics trafficking organizations. I have received extensive specialized training in the field of controlled substance identification, investigation and enforcement.

## PURPOSE OF AFFIDAVIT

4.  I am submitting this affidavit in support of an application for a criminal complaint against Edgar CASTRO a/k/a "Frank Torres" and Julio Antonio ORTIZ CHAPARRO

(collectively, the "CHARGED DEFENDANTS") for violations of 21 U.S.C. § 846 (Conspiracy to Distribute, and to Possess with Intent to Distribute More than Five Kilograms of Cocaine) (the "CHARGED OFFENSE");

5. For the reasons set forth in this affidavit, I submit that probable cause exists to believe that the CHARGED DEFENDANTS have committed violations of the CHARGED OFFENSE.

6. This affidavit is based upon information I have gained from my investigation, my training and experience, as well as information from other law enforcement officers. Since this affidavit is being submitted for the limited purposes of obtaining a criminal complaint against the CHARGED DEFENDANTS, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the criminal complaint.

## BACKGROUND

*Interception and Inspection of the TARGET PACKAGE in Puerto Rico*

10. On August 8, 2019, Magic Logistics (Toa Baja, Puerto Rico Office), a division of Magic Transport Inc., received a brown cardboard box shipment, weighing approximately 245 lbs. and measuring approximately 49 inches by 42 inches by 43 inches, from a new customer, "Thor IT Service," 1302 Avenida Pinero, San Juan, Puerto Rico (the "TARGET PACKAGE"). The package was addressed to "Universal Automotive, 576 Haverhill Street, Lawrence, MA." The shipper contact listed on the shipping paperwork for Thor IT Service was listed as Jesus VILLANUEVA RONDON. The consignee on behalf of Universal Automotive was listed as "Frank Torres", with telephone number 339-440-7032, later identified to be Edgar CASTRO.

Telephone number 339-440-7032, is a prepaid phone with no known subscriber (Target Telephone #1, hereinafter, "TT-1").

11. On August 8, 2019, after receiving the TARGET PACKAGE, a Magic Logistics employee noticed that the shipper's cargo description stated, "Parts and Accessories of Vehicle" and selected the box shipment for inspection. Magic Logistics' common practice is to inspect all shipments claiming to be carrying automobile parts to inspect for any possible hazards being shipped. The inspection by Magic Logistics revealed the box shipment was full of twelve individual black plastic bins. The Magic Logistics employee determined the first three black plastic bins he searched were empty. The employee checked a fourth black plastic bin and discovered three suspicious plastic-wrapped brick shaped packages inside the bin which were covered with paper and miscellaneous transistors. The employee reported his findings to Magic Logistics' Compliance Officer and showed him the suspicious packages within the black plastic bin. Magic Logistics then contacted U.S. Customs and Border Protection ("CBP") and HSI and requested assistance with determining what the suspicious items were in the shipment.

12. Upon CBP's arrival, Magic Logistics showed the black plastic bin containing the suspicious brick shaped packages wrapped in plastic to CBP. A CBP Narcotics Detector Dog ("NDD") was run on the plastic bins to determine if they contained narcotics. The NDD alerted to a trained odor of narcotics emanating from the plastic bins. Magic Logistics continued the inspection of the shipment and requested CBP officers' assistance.

13. A total of twenty nine brick shaped packages were discovered inside the plastic bins in the TARGET PACKAGE by Magic Logistics and CBP Officers. A total of five brick shaped packages were tested by CBP Officers using the GEMINI Analyzer and all five brick

shaped packages tested positive for the properties of cocaine. CBP Officers seized the suspected 29 brick shaped packages and turned them over to HSI for further investigation. The total weight of narcotics seized was 34.30 kilograms of suspected cocaine with packaging. An HSI agent removed all wrappings from the kilogram bricks for further processing and investigation. A total of 6.35 kilograms (6 bricks) of cocaine was turned over to your affiant on August 13, 2019 for a possible controlled delivery attempt to the consignee's address of Universal Automotive, 576 Haverhill Street, Lawrence, MA 01841. The date of the delivery from Magic Logistics for the box shipment to the consignee was set for August 26, 2019.

*Surveillance of CASTRO and Identification of TARGET PREMISES*

14. On August 16, 2019, the Honorable U.S. Magistrate Judge Marianne B. Bowler issued a search warrant (19-MJ-2353-MBB) for location information for TT-1 from T-Mobile. On August 19, 2019, your affiant served the search warrant on T-Mobile and began receiving location data for TT-1 on the same date.

15. On August 19, 2019, at approximately 10:11 p.m., your affiant went to 64 Pemberton Street, Revere, MA based on location data for TT-1 (the "TARGET PREMISES"). Your affiant observed a gray Toyota Venza bearing Massachusetts registration 3XPA30 parked in front of the TARGET PREMISES. Your affiant also observed a black Chevrolet Silverado pickup bearing Massachusetts registration 397VY8 parked in the driveway of the residence. Your affiant checked the Massachusetts Registry of Motor Vehicle database for active driver's licenses for the TARGET PREMISES. Your affiant located three individuals associated with that address, Yara Gomes, the registered owner of the Toyota Venza, Edgar CASTRO, and a third individual, the registered owner of the black Chevrolet Silverado.

16.     On August 20, 2019, at approximately 10:36 a.m., your affiant went to LA Fitness, 1450 Broadway Saugus, MA, based on location data for TT-1. Your affiant located the gray Toyota Venza bearing Massachusetts registration 3XPA30 that was registered to Yara Gomes in the parking lot of LA Fitness.

17.     On August 20, 2019, your affiant conducted surveillance of the TARGET PREMISES. Your affiant received location data which showed that TT-1 was located on Malden Street, seven blocks from the TARGET PREMISES, at 7:38 p.m.  At approximately 7:40 p.m., your affiant observed Yara Gomes, Edgar CASTRO, and a young female child arrive at the TARGET PREMISES in the Toyota Venza bearing Massachusetts Registration 3XPA30. Gomes, CASTRO, and the child went into the TARGET PREMISES carrying shopping bags. Your affiant received location data which showed TT-1 was located at the TARGET PREMISES at approximately 7:53 p.m.

18.     On August 20, 2019, your affiant conducted investigative checks in Law Enforcement databases for Gomes and CASTRO. Your affiant located multiple records for CASTRO. CASTRO was identified in an HSI investigation in 2011 as being associated with Omar Delgado. Delgado delivered a kilogram of cocaine to an HSI undercover agent in 2011. CASTRO was identified as one of three individuals in 2011 who were involved in the shipping of a Jeep Grand Cherokee from Boston, MA to Puerto Rico that was found to contain 1.3 million dollars in the door panels of the vehicle. CASTRO was listed on the manifest for the Jeep and had the same Massachusetts driver's license number that your affiant located in the Massachusetts Registry of Motor Vehicle database for CASTRO. CASTRO also has criminal history in Puerto Rico from April 20, 2001 for violating the Narcotics Act in Carolina, Puerto

Rico. The disposition of the case is unknown by your affiant. Your affiant did not locate any criminal records for Gomes.

19. On August 21, 2019, at approximately 8:21 a.m. your affiant observed Gomes and a young child exit the TARGET PREMISES and get into the gray Toyota Venza. At approximately 8:23 p.m., CASTRO exited the TARGET PREMISES and also got into the rear driver's side passenger seat of the Toyota Venza. Location data from 8:23 a.m. showed that TT-1 was located at the TARGET PREMISES. At approximately 8:24 p.m., Gomes, CASTRO, and the young female child left the TARGET PREMISES in the Toyota Venza. Location data from 8:38 a.m., had TT-1 on Route 1 after having gone over the Tobin Bridge. At approximately 4:45 p.m., Gomes, CASTRO, and the young female child returned to the TARGET PREMISES in the gray Toyota Venza. Location data for TT-1 from 4:53 p.m., had TT-1 located at the TARGET PREMISES. Based on these surveillance observations, law enforcement databases searches, and the location data for TT-1, your affiant believes that the TARGET PREMISES is the primary residence for Gomes and CASTRO.

*Repackaging and Installation of Trip Device, GPS Locator, Audio Locator, and Ultraviolet Theft Detection Powder in the TARGET PACKAGE*

21. On August 26, 2019, the TARGET PACKAGE was repackaged to give the appearance that it had not been opened. Six of the brick-shaped kilogram packages of cocaine were placed back into the TARGET PACKAGE. 23 similarly shaped and wrapped brick-shaped objects of a "sham" (non-controlled) substance were placed in the TARGET PACKAGE in place of the other 23 brick-shaped kilograms of suspected cocaine that were seized on August 8, 2019.

22. Pursuant to a search warrant issued by the Honorable Marianne B. Bowler on

7

August 22, 2019 (19-mj-2396-MBB), in advance of the controlled delivery of the TARGET PACKAGE, investigators concealed the following additional items in the TARGET PACKAGE:

   a. An electronic trip device, which would emit a signal that can be monitored by investigators and that is designed to indicate when the TARGET PACKAGE is opened;

   b. A GPS locator, which would emit a signal that can be monitored by investigators and that is designed to provide investigators location information for the TARGET PACKAGE; and

   c. Ultraviolet detection powder, which is a substance that transfers easily upon contact and is only visible when illuminated by ultraviolet light. Investigators applied the powder to the contents of the TARGET PACKAGE. It is designed to provide evidence of any individuals who handle the contents of the TARGET PACKAGE upon the illumination of their hands, arms, and clothes with ultraviolet light.

23. The trip device was inserted into the TARGET PACKAGE solely for the purpose of determining when the TARGET PACKAGE was opened after the controlled delivery of the parcel.

24. The GPS locator was inserted into the TARGET PACKAGE solely for the purpose of providing location information of the TARGET PACKAGE after the controlled delivery of the parcel.

25. The ultraviolet detection powder was added to the contents of the TARGET PACKAGE solely for the purpose of determining who handled the contents of the TARGET

PACKAGE after the controlled delivery of the parcel by shining ultraviolet light on the hands, arms, and clothes of those individuals who may have handled the TARGET PACKAGE.

*Surveillance of the TARGET PREMISES and CASTRO prior to the Controlled Delivery of the TARGET PACKAGE and Telephone Calls to and from TT-1*

26. On August 26, 2019, at approximately 8:27 a.m., agents observed CASTRO exit the TARGET PREMISES and enter his vehicle, the gray Toyota Venza bearing Massachusetts registration 3XPA30, registered to Yara Gomes. The location data for TT-1 showed that TT-1 was located at the TARGET PREMISES at 8:23 a.m. and then located on Route 1 in Charlestown, MA at approximately 8:38 a.m.

27. At approximately 9:33 a.m., your affiant called TT-1 and asked for Mr. Torres, the recipient name on the TARGET PACKAGE. Your affiant spoke with the person who answered the telephone, believed to be CASTRO. Your affiant advised the user of TT-1 that the TARGET PACKAGE would be delivered to the shipping address between 2:00 p.m. and 4:00 p.m. that day. Your affiant also advised the user of TT-1 that the driver would contact him a half hour before delivery of the TARGET PACKAGE. The user of TT-1, believed to be CASTRO, asked your affiant to contact him again in 20 minutes. This telephone call was recorded.

28. At approximately 9:40 a.m., your affiant received a telephone call from TT-1 and answered as Magic Logistics. A different male from the previous telephone call asked your affiant if your affiant was the driver of the delivery truck. Your affiant told the male that the driver's name was Mark. Your affiant also told him that the driver would make the delivery between 2:00 p.m. and 4:00 p.m. Your affiant asked the male who was going to sign for the package and the male stated that "Frank" was going to sign for it. Based on the post-arrest

9

interaction with ORTIZ CHAPARRO described below, your affiant believes that the male on this telephone call was ORTIZ CHAPARRO. This telephone call was recorded.

29. At approximately 11:05 a.m., agents observed CASTRO arrive at 576 Haverhill Street, Lawrence, MA in the gray Toyota Venza and park on the side of the building near Community Avenue. Agents observed CASTRO meet with ORTIZ CHAPARRO and enter the bay garage of Universal Auto Repair, the intended recipient of the TARGET PACKAGE.

30. Location data for TT-1 after 11:05 a.m. confirmed that TT-1 was located at 576 Haverhill Street. Surveillance agents also observed CASTRO at the delivery location prior to the controlled delivery of the TARGET PACKAGE.

31. At approximately 2:13 p.m., agents observed CASTRO and ORTIZ CHAPARRO walk away from the side of the building where CASTRO's vehicle was located towards Community Avenue and approach a gray Nissan Rogue, Massachusetts Registration 7RY481. Agents later determined that the Nissan Rogue was being driven by Nelson Valerio Starling and a Hispanic Male wearing a black and gray hooded sweatshirt, later determined to be Luis Rodriguez. Valerio Starling's vehicle was taken into the garage bay of Universal Auto Repair a short time later. While waiting for the TARGET PACKAGE to be delivered, agents observed CASTRO, ORTIZ CAPARRO, Rodriguez, and Valerio Starling standing together outside the garage bay doors and also enter the garage bay doors of Universal Auto Repair.

*Controlled Delivery of the TARGET PACKAGE to the Shipping Address, 576 Haverhill Street, Lawrence, Massachusetts*

32. On August 22, 2019, agents obtained a search warrant issued by the Honorable Marianne B. Bowler (19-mj-2396-MBB) to search 576 Haverhill Street, after the

completed delivery and acceptance of the TARGET PACKAGE at that location.

33.     On August 26, 2019, at approximately 3:10 p.m., an investigator, acting in an undercover capacity (the "UC") and dressed as a delivery person, delivered the TARGET PACKAGE to 576 Haverhill Street, Lawrence, Massachusetts.

34.     The UC was met by Rodriguez at the delivery location. The UC moved the delivery truck up Community Avenue parallel to the garage bay doors of Universal Auto Repair. The UC lowered the TARGET PACKAGE from the UC delivery truck. Rodriguez and ORTIZ CHAPARRO assisted the UC in removing the TARGET PACKAGE from the delivery truck. Rodriguez, ORTIZ CHAPARRO, and the UC then moved the TARGET PACKAGE from Community Avenue up to the third garage bay door. ORTIZ CHAPARRO went inside the garage bay door and Rodriguez signed for the TARGET PACKAGE. The UC removed the pallet jack from the TARGET PACKAGE and ORTIZ CHAPARRO backed a Honda Ridgeline pickup truck bearing a Massachusetts Repair plate up to the TARGET PACKAGE. ORTIZ CHAPARRO then waved his arm in a motion indicating for CASTRO and Rodriguez to come to him. CASTRO and Rodriguez then went to the back of the Honda Ridgeline pickup truck and assisted ORTIZ CHAPARRO and Valerio Starling with lifting the TARGET PACKAGE into the back of the pickup truck. ORTIZ CHAPARRO, Valerio Starling, and Rodriguez then walked back inside the garage. CASTRO assisted the UC with putting the pallet jack back on the delivery truck. Rodriguez then exited the garage and helped the UC with the lift gate on the delivery truck. The UC then left the location in the delivery truck.

35.     ORTIZ CHAPARRO, Valerio Starling, and Rodriguez then met on the corner of the building nearest to CASTRO's vehicle. Rodriguez and Valerio Starling went back inside

the garage. ORTIZ CHAPARRO moved the Honda Ridgeline pickup with the TARGET package to a dumpster on the south side of 576 Haverhill Street in front of CASTRO's vehicle. ORTIZ CHAPARRO backed up to the dumpster and CASTRO opened the tailgate of the Honda Ridgeline. Valerio Starling began to cut open the TARGET PACKAGE and then ORTIZ CHAPARRO took over and continued removing the shrink wrap and cardboard from the TARGET PACKAGE. ORTIZ CHAPARRO lifted the cover of the TARGET PACKAGE. At this time, the trip device alerted agents that the TARGET PACKAGE was opened.

36. CASTRO moved his vehicle, the gray Toyota Venza, from its parking space on the side of Universal Auto Repair and turned the vehicle around. CASTRO backed the Toyota Venza up to the passenger side doors of the Honda Ridgeline. Valerio Starling opened the Toyota Venza's trunk. Rodriguez then walked over to the Toyota Venza. ORTIZ CHAPARRO then began removing the twelve black plastic bins from the TARGET PACKAGE. Valerio Starling, Rodriguez, and CASTRO took the ten full black plastic bins from ORTIZ CHAPARRO and placed them in the Toyota Venza's trunk and backseat. The two empty black plastic bins were left on the ground behind the Honda Ridgeline.

37. At approximately 3:41 p.m., your affiant gave the order for investigators to move in and detain the individuals unpacking the TARGET PACKAGE. At the same time, investigators performed a protective sweep of the Universal Auto Repair building and secured individuals inside temporarily. These individuals were subsequently released after determining that they did not pose a threat to officer safety. Investigators did not conduct a search of the Universal Auto Repair property.

*Post-Arrest Actions*

38.     The CHARGED DEFENDANTS were transported to the HSI Office in Boston for identification, interview, and to allow investigators to check for ultraviolet detection powder from the TARGET PACKAGE. The CHARGED DEFENDANTS had ultraviolet detection powder on their hands and arms.

39.     Investigators provided the CHARGED DEFENDANTS with their *Miranda* rights in Spanish. During his interview, CASTRO stated he remembered talking to your affiant on the telephone the morning of the delivery when your affiant called him about the delivery time. Your affiant asked CASTRO to explain the circumstances of his actions regarding the TARGET PACKAGE. CASTRO stated, "It is what it is." CASTRO later informed your affiant that he requested an attorney and the interview was terminated.

40.     After being provided with his *Miranda* rights in Spanish, your affiant asked ORTIZ CHAPARRO if he had any questions. ORTIZ CHAPARRO responded, "For me, it might be better if I had an attorney." Your affiant also heard ORTIZ CHAPARRO's voice multiple times during the booking process. When ORTIZ CHAPARRO requested an attorney, the interview was terminated.

## CONCLUSION

41.     Based upon the foregoing, and based upon my training and experience, I submit that probable cause exists to believe that the CHARGED DEFENDANTS have

committed violations of the CHARGED OFFENSE. Accordingly, I respectfully request that a criminal complaint be issued for the CHARGED DEFENDANTS.

_____
Sean Rafferty
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 27th day of August 2019.

_____
Honorable Marianne B. Bowler, USMJ
United States Magistrate Judge
District of Massachusetts